UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLI FREE I GARNER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-383 |
| | § | |
| CANDACE MOORE, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS ACTION**

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C.

§ 1983.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321

(1996), any prisoner action brought under federal law must be dismissed if the complaint

is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant immune from such relief.  *See* 42 U.S.C. § 1997e(c); 28

U.S.C. §§ 1915(e)(2), 1915A.   Plaintiff's action is subject to screening regardless of

whether he prepays the entire filing fee or proceeds as a pauper.  *Ruiz v. United States,*

160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th

Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999).  Plaintiff's *pro se* complaint

must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations

must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v.*

*Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that this action be dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), and further, that this action be counted as a "strike" for purposes of 28 U.S.C. § 1915(g).

## I.     Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.    Background facts and Plaintiff's allegations.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and he is currently confined at the McConnell Unit in Beeville, Texas. Plaintiff is an established and successful litigator, and he assists other offenders with their litigation, in addition to bringing civil actions on his own behalf.[1] He filed the instant lawsuit on November 22, 2013, alleging that certain McConnell Unit officers and officials, and in particular, those associated with the law library and its services, were purposely denying him access to the courts in violation of his First Amendment rights, and further, that Defendants' conduct was motivated by retaliation, in response to Plaintiff exercising his right of access to the courts, as well as his right to file grievances.

---

[1] For example, in a previous lawsuit before this Court, *Garner v. Livingston,* Case No. 2:06-cv-218, Plaintiff challenged as unconstitutional, and in violation of other federal laws, certain prison policies that prohibited him from wearing a beard or a kufi in violation of his right to exercise his Muslim faith. That case proceeded to a bench trial, and by judgment entered May 19, 2011, plaintiff was granted injunctive relief to wear a ¼ inch beard as a religious exercise, although his request to wear a kufi was denied. *Id.* at D.E. 153, 154. The decision was upheld on appeal. *See Garner v. Kennedy,* 713 F.3d 237 (5th Cir. 2013).

On March 11, 2014, a *Spears*[2] hearing was conducted.  The following allegations were made in Plaintiff's original complaint (D.E. 1), or at the hearing:

As a well-known "jail house" lawyer, Plaintiff engages in frequent law library sessions and, correspondingly, has ongoing requests for indigent supplies and materials, such as paper, postage, and writing materials, services that are handled by Ms. Moore, the "chief" law librarian, and the law library staff.  Officer Martinez and Officer Garza are correctional officers; however, their assignment is primarily in the law library, and when the unit is on lockdown, they assist in distributing requested legal materials to inmates.

On May 23, 2011, Plaintiff filed a lawsuit against Ms. Moore and other library personnel alleging that these defendants had conspired to retaliate against him for exercising his First Amendment rights.[3]  Plaintiff testified that, ever since suing Ms. Moore in Case No. 2:11-cv-169, she, Officer Martinez and Officer Garza have engaged in a campaign of harassment and retaliation to interfere with his law library access.[4]  In addition, Plaintiff claims that he has repeatedly complained to the wardens about the law library staff's conduct, but that these officials failed to intervene or otherwise correct or

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

[3] *See Garner v. Moore, et al.*, Case No. 2:11-cv-169.  In that action, Plaintiff alleged, *inter* alia, that he had experienced difficulty with Ms. Moore and Officer Joe Martinez in regards to his law library access dating back to July 2007.  *Id.*, at D.E. 1.  Following initial screening, Plaintiff's retaliation claims against Ms. Moore, Officer Martinez, and two additional law library staff were retained, and service ordered on those defendants.  *Id.*, D.E. 7.  Thereafter, summary judgment was granted in favor of defendants.  *Id.*, D.E. 45, 46, 47.  Plaintiff appealed, and by order issued as mandate dated August 8, 2013, the Fifth Circuit affirmed the summary judgment dismissal of Plaintiff's claims.  *Id.*, D.E. 65.

[4] In Case No. 2:11-cv-169, Plaintiff alleged that Ms. Moore and the law library staff had engaged in retaliation since 2007.

manage Ms. Moore and the law library staff.  Plaintiff has offered as exhibits to his original complaint, copies of his I-60 requests to attend the library and/or asking for indigent supplies, grievances dating back to July 2012, and numerous letters to Warden Monroe and other officials.[5]

The earliest date complained of in the instant lawsuit is July 12, 2012.  On that day, Plaintiff was told by law library staff that he could not enter the library unless he tucked the tails of his shirt into his pants, per TDCJ grooming policy.  However, due to a previous neck injury, Plaintiff had a medical pass allowing him to wear a zipper-front shirt rather than the regular prison pull-over shirt, and Plaintiff protested that tucking in the shirt would be contrary to his medical restriction.[6]  Ms. Moore responded that she had the authority to exclude him from the law library for failure to obey an order.  She related also that, once in the law library, she could order there be "no talking," a restriction that would prevent Plaintiff from assisting other inmates. A verbal dispute arose, ending with Ms. Moore ordering that Plaintiff be escorted out of the library.

On July 16, 2012, Plaintiff filed a Step 1 grievance, Grievance no. 2012196811, complaining about his ouster from the law library.  (*See* D.E. 1-1, pp. 7-8).  Warden Monroe denied the grievance stating that "offenders are to be on their best behavior … especially during the law library sessions as to not disturb others," and also finding that

---

[5] Plaintiff labelled his first exhibits as A – K, but then includes a series of exhibits that are also labeled A or B or C; thus, reference will be to the docket entry page number.

[6] Plaintiff has a lawsuit pending in which he claims that officers, aggravated by his legal successes and ability to wear a ¼ inch beard, as well as a special shirt for medical reasons, used excessive force against him. *See Gardner v. Metz, et al.,* Case No. 2:13-cv-383.

the staff's correction of Plaintiff's dress appearance did not amount to harassment.  *Id.*
Plaintiff filed a Step 2 appeal, and it was denied.  (D.E. 1-1, pp. 9-10).

On July 18, 2012, Plaintiff was served with two disciplinary cases.  (*See* D.E. 1-1,
pp. 19-20).  In Disciplinary Case No. 20120311900, Ms. Moore charged that Plaintiff had
failed to tuck his shirt in and refused to stop talking per her order to do so.  *Id.* at p. 19.
In Disciplinary Case No. 20120312034, Plaintiff was again charged with failing to obey
orders regarding his shirt and talking in the law library.  *Id.* at p. 19.  On that same day, a
disciplinary hearing was held on the disciplinary cases with Lieutenant James presiding
as the Disciplinary Hearing Officer ("DHO").  DHO James found Plaintiff not guilty in
both cases, noting that Plaintiff had a medical pass to have his shirt untucked, and also,
that the TDCJ does not have a so-called "no talking" rule.

On July 18 and 21, 2012, Ms. Moore refused to let Plaintiff attend the law library.

On July 23, 2012, Plaintiff sent an I-60 request to Ms. Moore to attend the library
which stated:

> Request to be scheduled [for] legal session Tuesday at 8:00
> a.m. to 10:00 a.m. or 1:00 p.m to 3:00 p.m. due to Ramadan
> scheduled services.  Said session is for legal research case law
> in *Garner v. Gutierrez.*  Ms. Moore, you're in
> charge/responsible that all requests are processed and sent to
> Count-room for lay-ins.  You deliberately denied me
> reasonable access to library on or about July 12th and 21st.
> It's no debate I did not receive any lay-ins.  You can schedule
> me as required by prison policy or continue violating this
> constitutional right.  If so, you're liable to another lawsuit.

(D.E. 1-2, p. 7).  Also on July 23, 2012, Plaintiff filed a Step 1 grievance, Grievance No. 2012250978, complaining that Ms. Moore had written him two bogus disciplinary cases. (D.E. 1-1, pp. 11-12).  An investigation was conducted, and Ms. Moore issued a written statement in which she denied using profanity or telling Plaintiff to "shut-up," but stated that Plaintiff had routinely been ordered to stop talking by herself and library staff.  (D.E. 1-1, p. 13).  Ms. Moore related that the McConnell Unit law library utilizes the "no talking without permission" rule as directed in the Access to Court ("ATC") policy, and in particular, ATC-050.  *Id.*  She continued:

> … In fact, the ML Law Library utilizes a specific table for talking, situated away from other scheduled offenders to alleviate distraction and foster an atmosphere that is conclusive [sic] to legal research for all other offenders.

(D.E. 1-1, p. 13).  Warden Barber denied the grievance finding that Plaintiff's conduct did not comply with the law library rules.  (D.E. 1-1, p. 12).  Plaintiff filed a Step 2 appeal of this grievance, and it was denied.  (D.E. 1-1. pp. 14-15).

On August 16, 2012, during a law library session, Officer Martinez told Plaintiff that he had orders "to write him up" for any small infraction.  During this session, Plaintiff noticed Ms. Moore and Officer Martinez watching him closely.  Thereafter, on August 18, 2012, Plaintiff received a disciplinary case written by Officer Martinez charging him with failure to obey an order to tuck-in his shirt.[7]  (D.E. 1, Ex. J).  A disciplinary hearing was held the next day, and DHO James found Plaintiff not guilty.  *Id.*

---

[7] Plaintiff immediately filed a Step 1 grievance that same day challenging the charge and claiming that Warden Gonzales (not a defendant herein) had instructed Ms. Moore and her staff

On September 10, 2012, Plaintiff sent a letter to Warden Monroe raising two primary concerns, one being that officers had attempted to get him "into the barbershop," and the other being that Ms. Moore "is out of control." (D.E. 1, Ex. K). As to Ms. Moore in particular, Plaintiff complained that, ever since his religious exercise case had gone to trial, he was having difficulty getting his indigent supplies. *Id.* at 3. He claimed that he had asked for 50 pages of paper, 2 carbon papers, 5 pens and 5 envelopes, and that these supplies were necessary for his ongoing litigation in *Garner v. Gutierrez, Garner v. Moore,* and a state court action in small claims court. *Id.* Plaintiff alleged further that Ms. Moore was hindering his ability to assist other inmates with their litigation by "arbitrarily" enacting "imaginary" rules not mandated by TDCJ policy. *Id.*

On September 24, 2012, Plaintiff filed a Step 1 grievance, Grievance No. 2013013569, complaining that Ms. Moore was retaliating against him for filing the lawsuit against her. (D.E. 1-2, pp. 18-19). He complained of the disciplinary cases she had filed and in which he was found not guilty, and alleged also that she had delayed his receipt of indigent supplies because, in response to his request, she sent him only 5 envelopes, 10 pages of paper, and 2 carbons, and she would not give him 3 pens, even though he had sent in 3 empty cartridges with his requests. *Id.* Plaintiff complained further that "commonsense" would lead all prison personnel to know that he in fact needed 100 pages of paper because he not only had two federal lawsuits pending, but was filing also a "medical lawsuit" and he had a small claims court action. *Id.*

---

to write disciplinary cases against him. (D.E. 1-2, pp. 9-10). The grievance was returned unprocessed with a notation that Plaintiff had not yet had a disciplinary hearing.

On November 2, 2012, Warden Monroe denied this grievance, responding:

> Your complaint has been noted.  An investigation showed that Ms. Moore has filled your requests for supplies with the exception of the pens due to according policy offenders are only supposed to have a one for one exchange with pens. Also, there is no evidence to support you complaint that Ms. Moore is retaliating against you by writing disciplinary cases.

(D.E. 1-2, p. 19).[8]

On Tuesday, February 26, 2013, the McConnell Unit was on a semi-annual lockdown.  Plaintiff sent an I-60 request to Ms. Moore requesting 2 writ of habeas corpus forms, one *in forma pauperis* form, and Xeroxed copies of 3 cases.  Ms. Moore denied Plaintiff's request stating that supplies must be requested on Mondays.  On Wednesday, February 27, 2013, Plaintiff asked again for the supplies and cases, and again, Ms. Moore refused.  On that same day, Plaintiff sent a letter to Warden Monroe complaining about Ms. Moore's denial of indigent supplies, (D.E. 1-3, p. 3), and on March 4, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 2013106477, complaining about her refusal to provide the supplies requested.  (D.E. 1-3, pp. 1-2).  He stated that Ms. Moore was "dumb as a billy goat" and was "trying to be slick" when she denied his request and cited to administrative rules.  *Id.*

On April 16, 2013, Warden Monroe denied the grievance, stating:

---

[8] Plaintiff filed a Step 2 appeal alleging that Warden Monroe was continuing to "push Monroe's dirt under the rug," and that Ms. Moore was a "pathological liar" and continued to maintain the prison's "good old boy" system.  (D.E. 1-2, pp. 20-21).  Plaintiff's Step 2 appeal was denied with the notation that "indigent supplies are issued in accordance with BP-03.91 and AD-14.09.  *Id.* at p. 21.

> Your complaint has been noted.  After a thorough review, of your request for legal forms, the following was found.  You submitted multiple requests on I-60/request [forms].  You have been advised on several occasions by law library staff to submit "separate" forms for multiple requests.

(D.E. 1-3, p. 2).  Warden Monroe set forth specific examples of Plaintiff seeking multiple items in one request, such as legal forms with postage, or legal forms with Xeroxed case law.  He also noted that on March 3, 2013, Plaintiff was provided with all requested materials.[9]  *Id.*

On March 6, 2013, at 10:00 a.m., Officer Garza brought Plaintiff three folders, each containing a Xeroxed copy of a federal case Plaintiff had requested to review.  At approximately 5:00 p.m., Officer Garza returned to pick-up the folders. Plaintiff questioned Officer Garza about the "premature pickup" of the materials, stating that case law folders were usually returned the next morning and that he was entitled to possession of the cases overnight.  Officer Garza began to walk away, and in response, Plaintiff held the folders out of his cell stating "you forgot these."  Officer Garza returned to Plaintiff's cell and stated that, because of Plaintiff's objection, he would no longer take the folders. The next day, Plaintiff received a "Notice of Legal Research Material Suspension" based on Officer Garza's notation that Plaintiff had argued that he was allowed to keep the materials overnight.   (D.E. 1-3, p. 8).  The suspension of legal research material was from 3/6/13 and ended 3/13/13.  *Id.*

---

[9] It is not known whether Plaintiff appealed this grievance, but if he did so, he did not offer a copy of it with his exhibits.

On March 12, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 2013110258, challenging the law library suspension and alleging that Officer Garza had refused to take the three folders. (D.E. 1-3, pp. 11-12). Warden Barber denied this grievance. *Id.* at 2. Plaintiff filed a Step 2 appeal, and it was denied. (D.E. 1-3, pp 9-10).

On March 19, 2013, Plaintiff requested Xeroxed materials. He "finally" received them on March 21, 2013, but Officer Martinez did not bring an envelope which Plaintiff also needed, and Officer Martinez pretended to not know about the envelope. By letter dated March 21, 2013 Plaintiff complained to Warden Monroe of the law library staff's pattern of harassment, but no action was taken. (D.E. 1-3, pp. 13-14).

On Memorial Day, May 27, 2013, Plaintiff requested indigent supplies including 100 sheets of paper, 5 envelopes, 1 pen, and 2 "writ" envelopes. Ms. Moore "singled out" Plaintiff's request and only provided 5 regular envelopes, and did not give him the 100 sheets of paper or writing materials he had requested. On June 3, 2013, Plaintiff sent a second request for supplies. Plaintiff also sent a letter to Warden Monroe complaining about Ms. Moore's "campaign of silly library harassment since February 2013." (D.E. 1-3, pp. 15-17). He did not get the paper or pens until the following week.

On July 17, 2013, Officer Garza performed a pat-down search of Plaintiff before allowing him to enter the law library. Officer Garza ordered Plaintiff to tuck-in his shirt, noting that his June 13, 2013 medical pass to wear the front-zipper shirt was effective for 30 days and had expired. Plaintiff had in fact requested a renewal of his zipper-front shirt pass, but the "administration on the unit deliberately interfered with his prescribed

treatment."  Officer Garza then "boasted" that Plaintiff "would not always win," and Ms. Moore watched this exchange.

On July 18, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 2013183594, complaining about the pat down as well as about Ms. Moore, Officer Garza, and Warden Monroe's failure to properly admonish the law library staff or otherwise monitor their conduct.  (D.E. 1-3, pp. 18-19).  The grievance investigator rejected the grievance noting "malicious use of vulgar, indecent, or physically threatening language."  *Id.* at 19. Plaintiff filed a Step 2 appeal, and it was returned unprocessed.  (D.E. 1-3, pp. 20-21, 22).

On September 9, 2013, Ms. Moore told Plaintiff that she was authorized to suspend his library privileges under the ATC policy.  Plaintiff requested to see a copy of written ATC policy several times, but Ms. Moore refused to show it to him.

On October 1-5, 2013, Plaintiff was excluded from the law library.  Plaintiff filed four consecutive grievances, but they were denied.[10]

On October 5, 2013, the unit was on lockdown.  On October 7, 2013, Plaintiff requested Xeroxed cases, which he got that week.  However, between October 14 (Columbus Day), and October 20, 2013, his folders with his law library requests were not picked up.  On October 21, 2013, his folders were picked up, and on October 25, 2013, Officer Garza delivered the requested items at 5:30 p.m.   Plaintiff asked Officer Garza why the delivery was so late, and Officer Garza asked him if he wanted another legal suspension.

---

[10] Plaintiff did not include these grievances in his exhibits, but he testified that he grieved the matter.

Plaintiff testified that Ms. Moore sometimes knowingly schedules him for law library lay-ins that conflict with scheduled Ramadan services.

For relief, Plaintiff is seeking a declaration that Defendants violated his constitutional rights, a permanent and preliminary injunction against Defendants Moore, Garza and Martinez to "cease interfering" with his right of access to the law library and to stop their harassment and retaliation against him; and a preliminary and permanent injunction against Defendants Davis, Monroe, and Barber to stop encouraging the wrongful conduct of the law library staff.   Finally, Plaintiff seeks compensatory and punitive damages.

At the hearing, Plaintiff was advised that he has two "strikes" under 28 U.S.C. § 1915(g).  It was discussed with Plaintiff how a third strike might impact his ability to bring nonfrivolous actions, and the other ramifications of losing the privilege to proceed *in forma pauperis.*  Following this discussion, Plaintiff was asked if he still desired to pursue this particular action, and he stated that he did.

## III.   Discussion.

### A.   Legal standard.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).   "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski*

*v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  *Id.*

**B.    Eleventh Amendment immunity and official capacity claims.**

Plaintiff does not state whether he is suing Defendants in their official or individual capacities, and therefore, it is assumed that he is suing them in both.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).   As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff is suing any Defendant in his or her official capacity for monetary damages, those claims are barred by the Eleventh Amendment.  Thus, it is

respectfully recommended that Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment.

### C.      Plaintiff's claims against the Defendant Wardens.

Plaintiff has sued former warden Lorie Davis, Warden Monroe and Warden Barber claiming that they have failed to manage properly Ms. Moore and the library staff and have, effectively, allowed the law library staff to violate his constitutional rights.

It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins,* 828 F.2d at 303-04; *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). For a supervisor to be liable under § 1983, the plaintiff must show that (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005). Establishing a supervisor's deliberate indifference generally requires a plaintiff to demonstrate "at least a pattern of similar violations." *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

Plaintiff contends that Warden Davis, Warden Barber, and Warden Monroe failed and continue to fail to supervise adequately Ms. Moore and the law library staff, effectively allowing them to do as they wish which, Plaintiff avers, includes denying him access to the courts and retaliating against him.  However, Plaintiff's own grievances and the Defendant Wardens' responses thereto, demonstrate that Warden Davis, when she was at the McConnell Unit, Warden Monroe, and Warden Barber, have consistently monitored and supervised Ms. Moore's operation of the law library and staff, and have repeatedly investigated Plaintiff's allegations of limited access.  Plaintiff's instant complaint and exhibits set forth a record of Defendants' supervision and monitoring. Because Plaintiff has complained so much, there is a plethora of evidence to establish, contrary to Plaintiff's allegations, that the wardens routinely examined the practices of Ms. Moore and her staff, and made investigation into those practices.

The fact is, despite those repeated investigations, the Defendant Wardens did not agree with Plaintiff's characterization of Ms. Moore's conduct as objectionable or obtrusive.  Plaintiff offers evidence that on three occasions, he was issued disciplinary cases by the law library staff, and for each of those cases, the DHO found Plaintiff not guilty.  Although this evidence might suggest that Ms. Moore singled Plaintiff out for reprimand, the wardens investigated each instance and concluded that Ms. Moore and her staff had acted reasonably, especially within the context of the law library, an area of the prison with its own rules and a privilege to participate in.

Plaintiff's real complaint is that, upon investigation, the wardens did not agree with Plaintiff or DHO James, but instead, found in favor of Ms. Moore.  Plaintiff has no

constitutional right to have his grievances investigated, let alone resolved in his favor. *See Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).  His claims against Warden Davis, Warden Barber, and Warden Monroe are no more than objections to their findings that Ms. Moore operates the law library satisfactorily, and he fails to raise cognizable failure to supervise claims.   These claims lack a legal or factual basis, and therefore, it is respectfully recommended that Plaintiff's claims against Warden Davis, Warden Monroe, and Warden Barber be dismissed for failure to state a claim and/or as frivolous.

> **D.    Denial of access to the courts.**

Plaintiff alleges that Ms. Moore, Officer Garza, and Officer Martinez have denied him access to the courts.

Prisoners have a constitutionally protected right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement). Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999).  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984).  Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him."  *Id.* at 819.  In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial.  *See Lewis*, 518 U.S. at 356.  He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access.  *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Plaintiff has failed to allege, let alone offer any evidence, to establish that he was prejudiced as a litigant in any nonfrivolous litigation as a consequence of the actions of Ms. Moore's or the law library staff.  The evidence he offers suggests the opposite: Plaintiff has been able to develop his legal skills, adequately research and present issues to the courts, and to litigate successfully on behalf of himself, as well as others, in nonfrivolous litigation challenging both the constitutionality of confinement via habeas corpus, and the conditions of confinement in § 1983 litigation. The same cannot be said of the instant litigation.

As much as the evidence demonstrates that Ms. Moore might scrutinize Plaintiff more than other inmates, it is equally apparent that Plaintiff instigates conflict.  Over the last seven years, Plaintiff and Ms. Moore have developed a cantankerous, tat-for-tat relationship. Plaintiff's grievances are no more than name-calling insults hurled at Ms.

Moore and her staff, complaining of the slightest irregularities or missteps, and delays that would be considered negligible even in the free world.  Yet among all the bristling, Plaintiff fails to identify a single instance of actual prejudice.  At the evidentiary hearing, in detailing the alleged wrongs inflicted by Ms. Moore and her staff, Plaintiff described Defendants' actions as "inconvenient," "frustrating," and "annoying."  His June 3, 2013 grievance aptly describes Ms. Moore's conduct as a "campaign of *silly* library harassment since February 2013." (D.E. 1-3. Pp. 15-17).  The First Amendment does not provide the basis for complaining about silly, annoying, or inconvenient behavior.  Plaintiff's allegations fail to state cognizable claims for denial of access to the courts against Ms. Moore, Officer Garza, or Officer Martinez, and it is respectfully recommended that those claims be dismissed for failure to state a claim and/or as frivolous.

### E.   Retaliation.

Plaintiff claims Ms. Moore, Officer Garza, and Officer Martinez are retaliating against him for filing an earlier lawsuit and for filing grievances against them.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  *Jones v. Greninger,* 188 F.3d 322, 324-25 (5th Cir. 1999) (citing  *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998).  An inmate must allege more than his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). It is well-settled that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 Fed. Appx. 386, *1 (5th Cir. Jul. 12, 2010) (unpublished), citing *Wood*, 60 F.3d at 1166. In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

Taking as true Plaintiff's allegations, he squarely states a claim of retaliation against Ms. Moore, and perhaps, against Officer Garza, but the retaliatory actions complained of are undisputedly *de minimis*. None of Ms. Moore's actions, or those of her

staff, caused Plaintiff prejudice in any pending litigation.  Plaintiff receives writing and mailing supplies, attends law library sessions, and is able to meet and talk with other inmates.  When the unit is on lockdown, he still receives his indigent supplies and requested research materials are delivered to him cell-side.

Plaintiff complains that on March 6, 2013, Officer Garza did not take the research folders back to the library, and as a consequence thereof, Plaintiff received a suspension for refusing to return materials.  (D.E. 1-3, p. 8).  However, Plaintiff admits that he challenged Officer Garza's collection of the material at the time.  Officer Garza is not required to engage in a verbal battle or otherwise try to convince Plaintiff to obey the rules.  The retaliation in this case swings both ways, and in both directions, is *de minimis*, and does not rise to the level of a constitutional violation.  It is thus respectfully recommended that Plaintiff's retaliation claims be dismissed for failure to state a claim and/or as frivolous.

## IV.    Recommendation.

Plaintiff has impressed this Court on more than one occasion with his persistence, reasoning, legal arguments, and litigation skills.  However, just like attorneys, *pro se* litigants are subject to Rule 11's requirement to conduct a reasonable inquiry into the relevant law and facts, and to refrain from filing needless litigation.  *See* Fed. R. Civ. P. 11(b)(1).  This lawsuit was needless, and Plaintiffs' allegations, taken as true and in the light most favorable to him, fail to state cognizable constitutional violations under 42 U.S.C. § 1983 or viable retaliation claims.  Thus, it is respectfully recommended that this action be dismissed with prejudice for failure to state a claim and/or as frivolous pursuant

to 28 U.S.C. § § 1915(e)(2) and 1915A(b)(1).  It is further respectfully recommended that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g) against this Plaintiff, and that notice of this dismissal be forwarded to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler Texas, 75702, Attention: Betty Parker.

     Respectfully submitted this 9th day of April, 2014.

Jason B. Libby
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).